DALE F. COOK, SR., CHIEF OF THE ORIGINAL CHEROKEE NATION, PLAINTIFF *v.* UNITED STATES SENATE, PRESIDENT BILL CLINTON INDIVIDUALLY AS AGENT FOR THE WORLD TRADE ORGANIZATION AND DIRECTOR GENERAL THEREOF, AND THE STATES OF ALABAMA, GEORGIA, INDIANA, KENTUCKY, MARYLAND, NORTH CAROLINA, OHIO, PENNSYLVANIA, SOUTH CAROLINA, TENNESSEE, VIRGINIA, AND WEST VIRGINIA (THROUGH THEIR GOVERNORS), DEFENDANTS

Court No. 95–01–00001

(Decided February 9, 1996)

*Dale F. Cook, Sr., pro se,* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Jeffery M. Telep),* for defendant, United States.

*Jeff Sessions,* Attorney General, *Carol Jean Smith,* Assistant Attorney General, for defendant, State of Alabama.

*Michael J. Bowers,* Attorney General, *Thomas K. Bond,* Assistant Attorney General, for defendant, State of Georgia.

*Pamela Carter,* Attorney General, *Terry G. Duga,* Deputy Attorney General, for defendant, Indiana.

*Chris Gorman,* Attorney General, *William B. Pettus,* Assistant Attorney General, for defendant, State of Kentucky.

*Michael F. Easley,* Attorney General, *Jane T. Friedensen,* Assistant Attorney General, for defendant, State of North Carolina.

*Betty D. Montgomery,* Attorney General, *David A. Oppenheimer,* Assistant Attorney General, for defendant, State of Ohio.

*Thomas W. Corbett, Jr.,* Attorney General, *Lisa King Coleman,* Deputy Attorney General, for defendant, Commonwealth of Pennsylvania.

*Charles M. Condon,* Attorney General, *Treva G. Ashworth* and *Nathan Kaminski, Jr.,* Deputy Attorney General *(Kenneth P. Woodington),* for defendant, State of South Carolina.

*Charles W. Burson,* Attorney General and Reporter, *Bernard W. Greene,* Assistant Attorney General, for defendant, State of Tennessee.

*Darrell V. McGraw, Jr.,* Attorney General, *Donald L. Darling,* Senior Deputy Attorney General, for defendant, State of West Virginia.

*James S. Gilmore, III,* Attorney General, *Mary G. Morris,* Senior Assistant Attorney General, for defendant, Commonwealth of Virginia.

## Memorandum Opinion and Order

DiCalro, *Chief Judge:* Plaintiff, Dale F. Cook, Sr., "Chief of the Original Cherokee Nation," petitions the court to return ownership of all land acquired by the United States in certain agreements with Native Americans, or alternatively, find the passage of the General Agreement on Tariffs and Trade (GATT), as well as the GATT Treaty itself, unconstitutional. The court finds plaintiff lacks standing and has failed to fulfill the jurisdictional prerequisites of this court.

## Background

Plaintiff seeks a declaratory judgment regarding the constitutionality of the passage of the GATT Treaty (presumably the Uruguay Round Agreements Act, Pub. L. No. 103–465, 108 Stat. 4809 (1994) (codified in scattered sections of the United States Code)), and the unspecified injury its passage could have on "The Original Cherokee Nation and its citizens and inhabitants." (Pl.'s Compl. for Decl. J. at 2.) Specifically, plaintiff contends "the GATT document was so voluminous that the people were not informed of the contents and substance thereof and could not tell their representatives how to vote. They were therefore denied DUE PROCESS." *Id.* at 3.

Plaintiff also challenges the constitutionality of the Uruguay Round Agreements Act itself. As the Constitution of the United States placed "control of COMMERCE between the United States and the Indians, including [The Original Cherokee] Nation, in the hands of the U.S. CONGRESS," plaintiff contends, Congress could not cede control over this trade relationship to the World Trade Organization. *Id.* The end result, the plaintiff contends, is that "the GATT TREATY, passed by the Senate, weakens the Senate power, subordinates the United States' Sovereignty, [and] is in conflict with the Trade Relationship between the Indians and the United States of America as specified by the Commerce Clause of the U.S. Constitution." *Id.*

Due to this alleged illegality, plaintiff contends, the Federal Government and the individual states are confronted with a choice: to declare the Uruguay Round Agreements Act "Illegal, Null, and Void" or alternatively, to nullify the Hopewell Treaty, dismantle the United States, and permit ownership of all land and jurisdiction over that land to revert back to the "American Indian Nations from whence they came." *Id.* at 3–4. The United States government and certain states have responded to plaintiff's complaint with motions to dismiss. Plaintiff has not responded to these motions.

## Discussion

A. *Standing: Injury in Fact:*

Plaintiff has failed to demonstrate the foundational requirements for standing. To establish standing pursuant to Article III of the Constitution, plaintiff must demonstrate: (1) "injury in fact;" (2) causation; and (3) likelihood the injury can be redressed. *Lujan v. Defenders of Wildlife,*

504 U.S. 555, 560–61 (1992). The "injury in fact" must be "(a) concrete and particularized; and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (citations omitted). The burden falls on the plaintiff to demonstrate a live case or controversy, and at the very minimum, general factual allegations of injury resulting from defendant's conduct. *Id.* at 559–62.

It is unclear how passage of the Uruguay Round Agreements Act has injured the plaintiff, or the unspecified members of The Original Cherokee Nation. Plaintiff's complaint suggests only potential and undetermined injury. The complaint provides a "Declaratory Judgment is sought regarding the Constitutionality of [the Uruguay Round Agreements] Act and the effects it *could possible have* on The Original Cherokee Nation and its citizens and inhabitants." (Pl.'s Compl. for Decl. J. at 2) (emphasis added). That plaintiff seeks a declaratory judgment does not absolve him of his duty to present a justiciable claim, including the jurisdictional prerequisite that plaintiff suffer an injury in fact. *Public Citizen v. Sampson,* 379 F. Supp. 662, 664–66 (D.D.C. 1974), *aff'd* 515 F.2d 1018 (D.C. Cir. 1975).

The wording of plaintiff's claims demonstrates plaintiff has not suffered harm, nor that such harm is imminent, or even possible. Accordingly, it is difficult to see how the court may categorize plaintiff's injury as concrete. As Congress has already enacted the Uruguay Round Agreements Act, plaintiff cannot suffer injury from its future *passage.* Plaintiff further cannot contend his injury stems from the Act itself, as the pre-existing framework of the GATT Treaty has already substantially altered Congressional control over international trade relations.

Similarly, plaintiff's due process claim fails to provide how the actions of Congress have affected plaintiff's person or property, or why plaintiff would be entitled to such consultation with Congress. *Cf. Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445 (1915) (finding passage of general statutes affecting persons or property does not entitle such adversely affected individuals to be heard, as their rights are protected through democratic society.)

Even if the court were to find some unlikely basis on which to find the unconstitutionality of the Uruguay Round Agreements Act has nullified the Hopewell Treaty and deprived the United States of its sovereignty, which the court does not, there is no indication plaintiff also has been harmed. Plaintiff must demonstrate as a "litigant before the court[, he] was intended to be protected, benefited, or regulated" by the Hopewell Treaty. *See Autolog Corp. v. Regan,* 731 F.2d 25, 29 (D.C. Cir. 1984) (zone of interests test). Plaintiff cannot demonstrate how the Act has affected him in either of these ways.

To benefit from Indian treaty rights, a litigant must belong to a tribe that has "descended from a treaty signatory and 'ha[s] maintained an organized tribal structure.'" *Greene v. United States,* 996 F.2d 973, 976 (9th Cir. 1993). Plaintiff identifies himself as Chief for The Original Cherokee Nation, and cites to an exhibit to support his claim. Plaintiff's

exhibit, however, consists solely of a document attesting to the fact that plaintiff opened a bank account on behalf of The Original Cherokee Nation one month preceding the suit. (Pl.'s Pet. for Decl. J. Ex. A.) Plaintiff does not indicate the membership of The Original Cherokee Nation, nor its relationship to other, federally-recognized Cherokee tribes.

Part 83, title 25, Code of Federal Regulations charges the Department of the Interior through the Bureau of Indian Affairs with the duty to acknowledge the certain Native American groups that exist as tribes. 25 C.F.R. Part 83 (1995). The Bureau of Indian Affairs does not recognize The Original Cherokee Nation as an Indian Tribe. *See Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs,* 60 Fed. Reg. 9250 (Dep't Int. 1995) (listing all federally-acknowledged Indian tribes in United States). The effect of this omission denies plaintiff the privileges and immunities available to other federally acknowledged Indian tribes by virtue of their relationship with the United States as an independent government, and accordingly, as signatories and/or beneficiaries of Native American treaty rights. Moreover, the three federally-recognized tribes using the Cherokee name, the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians of North Carolina, and the United Keetoowah Band of Cherokee Indians of Oklahoma, fail to count Chief Dale Cook among their members. (Aff. of R. Lee Fleming; Aff. of Mildred Queen; Aff. of John Ross.) Accordingly, even if the Hopewell Treaty has been violated, plaintiff has failed to demonstrate the applicability of any potential injury from that violation to his own interests.

B. *Standing: Uruguay Round Agreements Act:*

Plaintiff further lacks standing, pursuant to the Uruguay Round Agreements Act's own provisions, to challenge the Act's supposed conflict with the Hopewell Treaty. The terms of the Act unmistakably limit private remedies solely to those brought by the United States. Subsection 3512(c)(1), title 19, United States Code provides that no person other than the United States may have a cause of action pursuant to the Uruguay Round Agreements, "or by virtue of congressional approval of such an agreement." 19 U.S.C. § 3512(c)(1) (1994). Accordingly, pursuant to subsection 3512(c)(1), plaintiff would lack standing to challenge any non-constitutional claims against the Uruguay Round Agreements Act.

Similarly, the Act also abrogates plaintiff's action against the States. Congress intended through subsection 3512(c)(2), to occupy the field with respect to any cause of action "under or in connection with any of the Uruguay Round Agreements, including by precluding any person other than the United States from bringing any action against *any State.*" 19 U.S.C. § 3512(c)(2) (1994) (emphasis added). Accordingly, plaintiff's claims against the states as to the conflict between the Hopewell Treaty and the Uruguay Round Agreements Act would also fail. Although the court does not decide whether these provisions preclude

constitutional attack upon the Act, plaintiff's constitutional claims are nonetheless deficient for the reasons given in section A.

CONCLUSION

Defendants' Motions to Dismiss granted. Plaintiff's action is dismissed for lack of standing.